UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RANDEL EDWARD PAGE, JR.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA et al.,<br><br>Defendants. | Case No. 3:23-cv-00851<br><br>Chief Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable William L. Campbell, Jr., Chief District Judge

**REPORT AND RECOMMENDATION**

Defendants the State of Tennessee (Tennessee), Baptist Memorial Health Care Corporation (BMHCC), Methodist Le Bonheur Healthcare (Methodist), Epic Systems Corporation (Epic), CorVel Corporation (CorVel), and The West Clinic, PLLC (West), have filed motions to dismiss pro se Plaintiff Randel Edward Page, Jr.'s complaint in this action.[1] (Doc. Nos. 7, 9, 15, 20, 34, 36.) For the reasons that follow, the Magistrate Judge will recommend that the Court grant the defendants' motions.

---

[1] The United States has not yet appeared in this action or responded to Page's complaint. On June 11, 2024, the Court found that "there is no indication that [Page] [ ] sent a copy of the summons and complaint 'by registered or certified mail to the Attorney General of the United States at Washington, D.C.' as required by Rule 4(i)(1)(B)" of the Federal Rules of Civil Procedure and ordered Page to show cause by June 24, 2024, why the Magistrate Judge should not recommend that the Court dismiss Page's claims against the United States under Rule 4(m) for Page's failure to effect timely service of process. (Doc. No. 47, PageID# 311.) The Court will address Page's claims against the United States in a separate report and recommendation if needed after June 24, 2024.

I.      **Background**

Page initiated this action on August 15, 2023, by paying the Court's civil filing fee and filing a form "complaint and request for injunction[.]" (Doc. No. 1, PageID# 1.) Page, who resides in Mississippi, asserts claims against the United States, Tennessee, BMHCC, Methodist, Epic, CorVel, and West. (Doc. No. 1.) Page checked a box indicating that this Court has federal question jurisdiction over his complaint and identified "the specific federal statutes" "at issue in this case" as 42 U.S.C. §§ 1983 and 1985; 28 U.S.C. §§ 1343 and 1361; and 18 U.S.C. §§ 242, 371, 666, 1001, 1341, 1509, 1951, and 1962. (*Id.* at PageID# 4.)

Page states that his claims against the defendants arise out of events that took place between 2017 and the present in two state court cases filed in Shelby County, Tennessee, and one federal action filed in this Court.[2] (Doc. No. 1.) Page's complaint alleges that:

> 1. The defendants are participating in a conspiracy to commit Fraud on the Court.
>
> 2. As part of the conspiracy, the defendants are covering up the theft of plaintiff[']s identity and property.
>
> 3. As part of the conspiracy, the plaintiff[']s Civil Rights are being violated.
>
> 4. As part of the conspiracy, the plaintiff[']s Constitutional Rights are being violated.
>
> 5. As part of the fraud, the plaintiff[']s mother (Mary Page) became a victim.
>
> 6. As part of the conspiracy, the fraud against (Mary Page) is being covered up by the defendants.
>
> 7. As part of the conspiracy, the plaintiff and plaintiff[']s family is being targeted by the defendants.

(*Id.* at PageID# 6.)

---

[2]     Page identifies the state court actions as case number "CT-002704-17 VII" in "Shelby County" "Circuit Court" and case number "CH-20-0288" in "Shelby County" "Chancery Court[.]" (Doc. No. 1, PageID# 5.) The federal action is *United States ex rel. Liebman v. Methodist Le Bonheur Healthcare*, No. 3:17-cv-00902 (M.D. Tenn.). (*Id.*)

Page further alleges that:

1. Emotional trauma and mental anguish has caused irreparable injury.

2. The emotional distress and psychological damage continues as plaintiff[']s stolen properties [*sic*] use has been promulgated.

3. The psychological trauma of being targeted by the defendants has caused irreparable injury.

4. The threats of violence has caused irreparable injury.

5. The deceptive operations by the defendants have caused irreparable injury.

6. State espionage has caused irreparable injury.

7. The use of State and Federal agencies to cover up the fraud committed against the plaintiff has caused irreparable injury.

(*Id.*)

Page seeks $300 million in damages; "an expert analysis of damages to include: a. Actual damages[,] b. Unjust enrichment[,] [and] c. Punitive damages"; and "royalties for the use of his property." (*Id.* at PageID# 7.)

The Court referred the action to the Magistrate Judge for case management and to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 4.) The docket reflects that Page requested and the Clerk of Court issued summonses addressed to each defendant (Doc. No. 3) and that Page filed proof of service affidavits stating he served each summons (Doc. Nos. 22–27).

Tennessee, BMHCC, Methodist, Epic, CorVel, and West have appeared and moved to dismiss Page's claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. Nos. 7, 9, 15, 20, 34, 36.) Tennessee argues that the doctrine of sovereign immunity bars Page's claims against it and, in the alternative, that Page's complaint fails to state any claims on which relief can be granted. (Doc. No. 16.) BMHCC, Methodist, Epic, CorVel, and West argue

3

that there are no private rights of action that would allow Page to bring claims against them under the criminal statutes identified in his complaint and that his remaining claims are either untimely or otherwise fail to state claims on which relief can be granted. (Doc. Nos. 8, 10, 21, 34-1, 37.) Page opposes the defendants' motions to dismiss (Doc. Nos. 17, 29, 35, 42, 43), Epic and West filed optional replies in support of their motions (Doc. Nos. 31, 44), and Page filed surreplies to West's motion (Doc. Nos. 45, 46).

## II. Legal Standards

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited subject-matter jurisdiction and can adjudicate only those claims authorized by the Constitution or an act of Congress. *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012). Article III of the Constitution extends the federal judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States," and several other categories of cases not at issue here.[3] U.S. Const. art. III, § 2, cl. 1; *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Congress has also granted federal courts diversity jurisdiction over civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. Whether the Court has subject-matter jurisdiction is a "threshold" question in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). This reflects the fundamental principle that "'[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'" *Steel Co. v.*

---

[3] For example, cases involving ambassadors, public ministers, and consuls and cases between two states or in which the United States is a party. U.S. Const. art. III, § 2, cl. 1.

*Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).

The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Id.* at 104. A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2005). A facial attack challenges the sufficiency of the pleading and, like a motion under Rule 12(b)(6), requires the Court to take all factual allegations in the pleading as true. *Enriquez-Perdomo v. Newman*, 54 F.4th 855, 861 (6th Cir. 2022). A factual attack "'contests the alleged jurisdictional facts by introducing evidence outside the pleadings.'" *Id.* (quoting *Gaetano v. United States*, 994 F.3d 501, 505 (6th Cir. 2021)). In resolving factual attacks, "'the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts, and the court can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction.'" *Id.* (quoting *Gaetano*, 994 F.3d at 505).

B.  **Federal Rule of Civil Procedure 12(b)(6)**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim[.]" Fed. R. Civ. P. 8(a)(2). However, "[t]he factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*

5

*v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A plaintiff must plead more than "'labels and conclusions[,]'" "'a formulaic recitation of the elements of a cause of action[,]'" or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (third alteration in original) (quoting *Twombly*, 550 U.S. at 555, 557). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Page appears pro se, the Court construes his filings "'liberally'" and holds his complaint "'to less stringent standards than formal pleadings drafted by lawyers[.]'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "However, this lenient treatment has limits." *Frengler v. Gen. Motors*, 482 F. App'x 975, 976 (6th Cir. 2012). "[C]ourts are not required to conjure up unpleaded allegations or guess at the nature of an argument." *Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir. 2001) (citing *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

### III. Analysis

#### A. Page's Criminal Statutory Claims

Page's responses in opposition to the defendants' motions to dismiss clarify that the core claims in his complaint are his claims asserted under 42 U.S.C. §§ 1983 and 1985 that the defendants violated and conspired to violate his Fourteenth Amendment rights to due process and equal protection and his claims that the defendants violated the Racketeering Influenced Corrupt Organizations Act (RICO), 18 U.S.C. § 1962. (Doc. Nos. 17, 35, 42, 43, 46.) Page's complaint

also cites eight federal criminal statutes as being at issue in his claims. (Doc. No. 1 (citing 18 U.S.C. §§ 242, 371, 666, 1001, 1341, 1509, and 1951).) To the extent that Page invokes these statutes as independent bases for his claims against the defendants, the Court finds that none of these criminal statutes provides a private right of action. *See Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994) (explaining that the Supreme Court has "been quite reluctant to infer a private right of action from a criminal prohibition alone" and "ha[s] not suggested that a private right of action exists for all injuries caused by violations of criminal prohibitions"); *Hamilton v. Reed*, 29 F. App'x 202, 204 (6th Cir. 2002) (affirming district court's dismissal of claims under federal criminal statutes because the "statutes concern[ed] criminal, rather than civil, offenses" and "[t]hus a private cause of action may not be brought for the alleged violations . . ."); *see also id.* (holding that plaintiff "possesse[d] no private right of action against the defendants for violations of 18 U.S.C. §§ 1505, 1506, and 1509"); *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997) (holding that violations of federal mail fraud statute,18 U.S.C. §§ 1341 and 1343, "do not give rise to private causes of action"); *AirTrans, Inc. v. Mead*, 389 F.3d 594, 597 n.1 (6th Cir. 2004) (holding that "there is no right to bring a private action under" 18 U.S.C. § 1001); *Crossett v. Emmet Cnty.*, No. 20-1268, 2020 WL 8969795, at *6 (6th Cir. Nov. 12, 2020) (holding that "[18 U.S.C.] § 371 is a criminal statute that does not create a private right of action"); *Slowik v. Lambert*, 529 F. Supp. 3d 756, 765 n.2 (E.D. Tenn 2021) (finding that "no private cause of action exists" under 18 U.S.C. § 242); *Command v. Bank of Am., N.A.*, No. 1:10-CV-1117, 2014 WL 4104719, at *13 (W.D. Mich. Aug. 19, 2014) (collecting authority for the proposition that "plaintiffs cannot maintain a cause of action under the Hobbs Act[, 18 U.S.C. § 1951,] because it is a federal criminal statute which does not give rise to a private cause of action"); *Waad v. Movseyan*, Case No. 19-cv-12599, 2020 WL 4050502, at *1 (E.D.

Mich. July 20, 2020) ("The Hobbs Act, 18 U.S.C. § 1951, is a law of the United States, but it is 'a criminal statute that does not provide a private right of action.'" (quoting *Standard v. Nygren*, 658 F.3d 792, 794 (7th Cir. 2011)); *Dixon v. Washington*, No. 18-2838, 2018 WL 5046033, at *3 (E.D. Pa. Oct. 17, 2018) ("Under 18 U.S.C. § 666, the federal criminal statute for theft or bribery concerning programs receiving federal funds, there is no provision for a private right of action.").

Page has not made any contrary argument. The Magistrate Judge will therefore recommend that the Court dismiss Page's criminal statutory claims.[4]

### B. Sovereign Immunity

Tennessee argues that it is entitled to Eleventh Amendment sovereign immunity and that the Court should therefore dismiss Page's claims against it under Rule 12(b)(1) for lack of jurisdiction. (Doc. No. 16.) Alternatively, Tennessee argues that the Court should dismiss Page's claims against it under Rule 12(b)(6) for failure to state any plausible claims for relief. (*Id.*) Because a finding of sovereign immunity would deprive the Court of subject-matter jurisdiction over Page's claims against Tennessee, *see Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015), the Court must address that argument first. *See Bird v. Parsons*, 289 F.3d 865, 872 (6th Cir. 2002) (holding that "the Supreme Court has . . . foreclosed th[e] possibility" of assuming jurisdiction without deciding and "proceed[ing] directly to the substantive claims" asserted).

"A state's assertion of sovereign immunity" in a motion to dismiss under Rule 12(b)(1) "constitutes a factual attack" on jurisdiction. *Hornberger v. Tennessee*, 782 F. Supp. 2d 561, 564

---

[4] Page's complaint also cites two jurisdictional statutes, 28 U.S.C. § 1343 and § 1361, neither of which provides a cause of action. Section 1343 states that federal district courts have original jurisdiction over actions brought under 42 U.S.C. § 1983 and § 1985. *See* 28 U.S.C. § 1343. Section 1361 states that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *Id.* at § 1361.

(M.D. Tenn. 2011). In resolving assertions of sovereign immunity, no presumption of truth applies to the plaintiff's factual allegations, and the "court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). District courts reviewing factual attacks on jurisdiction have "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). Under Sixth Circuit precedent, "'the entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity.'" *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006) (quoting *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002)).

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "There are three exceptions to a state's sovereign immunity: (1) when the state has consented to suit; (2) when the exception set forth in *Ex parte Young*, 209 U.S. 123 (1908)[,] applies; and (3) when Congress has clearly and expressly abrogated the state's immunity." *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 598 (6th Cir. 2016). None of these exceptions applies to Page's claims against Tennessee.

1. **State Waiver of Sovereign Immunity**

The Tennessee Constitution provides that Tennessee has sovereign immunity from claims brought against it unless the State Legislature expressly waives that immunity. Tenn. Const. art. 1, § 17. The State Legislature codified this provision in Tenn. Code Ann. § 20-13-102, which bars suits against the State of Tennessee in both state and federal court unless the State Legislature has expressly waived that immunity. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986);

*Woolsey v. Hunt*, 932 F.2d 555, 565 (6th Cir. 1991). The Sixth Circuit has held that Tennessee has not waived its immunity to claims brought under § 1983. *See Berndt*, 796 F.2d at 881. Page has not cited any authority to establish that Tennessee has waived its immunity to RICO claims, and this Court is not aware of any such waiver.

### 2. Congressional Abrogation of Sovereign Immunity

"Section 5 of the Fourteenth Amendment . . . grant[s] Congress the authority to abrogate the states' sovereign immunity." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000). A federal statute may abrogate the states' sovereign immunity if "Congress unequivocally expressed its intent to abrogate that immunity" while "act[ing] pursuant to a valid grant of constitutional authority." *Id.* at 73. The Supreme Court has held that § 1983 does not abrogate states' immunity to claims brought under it. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–67 (1989); *see also Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017). The Sixth Circuit has held that Congress did not abrogate states' sovereign immunity to claims brought under RICO. *See Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005) (holding that "RICO does not arise under § 5 of the Fourteenth Amendment" and thus is not a "law wherein Congress abrogated state sovereign immunity"); *see also Bair v. Krug*, 853 F.2d 672, 674–75 (9th Cir. 1988) (holding that appellants had not argued or proffered any authority to support finding that Congress abrogated states' sovereign immunity under RICO).

### 3. *Ex Parte Young* Exception

The *Ex Parte Young* exception allows suits for prospective injunctive relief against state officials acting in violation of federal law. *See Boler*, 865 F.3d at 412 (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). While Page's complaint requests injunctive relief (Doc. No. 1), the *Ex Parte Young* exception applies only to suits against state officials in their official capacities and "does not allow plaintiffs to bring claims against states or state agencies

themselves." *Brennan v. Mays*, No. 3:19-cv-00948, 2020 WL 6900138, at *3 (M.D. Tenn. Nov. 23, 2020) (citing *Puckett*, 833 F.3d at 598); *see also Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought."). Page's reliance on *Owen v. City of Independence*, 445 U.S. 622 (1980), is misplaced. (Doc. No. 17.) The Supreme Court did not address states' Eleventh Amendment sovereign immunity in *Owen*; instead, it addressed whether municipalities may invoke the judicially-created doctrine of qualified immunity in response to claims asserted under § 1983. *See* 445 U.S. at 624–58.

Tennessee is entitled to Eleventh Amendment sovereign immunity from Page's claims, and the Court should dismiss Page's claims against Tennessee for that reason.

  **C.  Page's Claims Against BMHCC, Methodist, Epic, CorVel, and West**

    **1.  § 1983 Claims**

Section 1983 provides a civil cause of action to any person deprived of federal rights by a person acting under color of state law. 42 U.S.C. § 1983. "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under color of state law deprived the plaintiff of a right secured by the Constitution or laws of the United States." *Green v. Throckmorton*, 681 F.3d 853, 859–60 (6th Cir. 2012) (quoting *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001)).

BMHCC, Methodist, Epic, CorVel, and West argue that Page's § 1983 claims against them are subject to dismissal for failure to state a claim because Page has not alleged that any of these defendants acted under color of state law. (Doc. Nos. 8, 10, 21, 34-1, 37.) "Typically, liability under § 1983 lies only if the defendant is a government entity." *Inner City Contracting, LLC v. Charter Twp. Of Northville*, 87 F.4th 743, 757 (6th Cir. 2023) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 156 (1978)). This is because "[t]he traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of

11

Case 3:23-cv-00851   Document 48   Filed 06/17/24   Page 11 of 17 PageID #: 323

state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Collier v. Austin Peay State Univ.*, 616 F. Supp. 2d 760, 773 (M.D. Tenn. 2009) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)); *see also McCormick v. Miami Univ.*, 693 F.3d 654, 661 n.3 (6th Cir. 2012) ("Section 1983 . . . only permits suits against state actors—i.e. defendants who have exercised power possessed by virtue of state law and made possible only because they were clothed with the authority of state law. (citing *West*, 487 U.S. at 49)).

However, "a private party's actions constitute state action under section 1983 where those actions may be 'fairly attributable to the state.'" *Nugent v. Spectrum Juv. Just. Servs.*, 72 F.4th 135, 140 (6th Cir. 2023) (quoting *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003) (en banc)). The Sixth Circuit recognizes "three tests for determining whether a private actor may be treated as a state actor: 'the public-function test, the state-compulsion test, and the nexus test.'" *Nugent*, 72 F.4th at 140 (quoting *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014)). "The burden is on the plaintiff to show that the private actor meets either test." *Inner City Contracting, LLC*, 87 F.4th at 757.

Page argues that "the public function doctrine [ ] transform[s] the private parties into state actors for" purposes of this case. (Doc. No. 46, PageID# 283.) "The public function test requires that the private actor exercise powers that are traditionally reserved to the state." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). "Only a narrow range of private action . . . has been deemed state action under this test[,]" *id.*, "such as holding elections, taking private property under the eminent domain power, or operating a company-owned town[,]" *Romanski v. Detroit Ent., L.L.C.*, 428 F.3d 629, 636 (6th Cir. 2005); *see also Carl*, 763 F.3d at 596 (holding that providing medical care to people incarcerated in state prisons qualifies as state action under public function test). "To determine whether the public function test is satisfied, 'the court

conducts a historical analysis to determine whether the party has engaged in an action traditionally reserved to the state, and the plaintiff bears the burden of making that showing.'" *Nugent*, 72 F.4th at 140 (quoting *Wittstock*, 330 F.3d at 902). Page has not made that showing here. His complaint does not include any details about BMHCC's, Methodist's, Epic's, CorVel's, and West's alleged actions. In response to some of the defendants' motions to dismiss, Page argues generally that "[t]he [d]efendants acted under the 'color of state law'" and that their "[a]cts [ ] included—but were not limited to—(a) the use of threats and intimidation; (b) perjury; (c) bribery; and (d) corrupt misleading conduct." (Doc. No. 17, PageID# 93.) But "[a]ny individual citizen" can commit those acts, and Page has not shown that BMHCC, Methodist, Epic, CorVel, and West "exercise[d] powers traditionally reserved exclusively to the state." *Anderson v. Cnty. of Hamilton*, 780 F. Supp. 2d 635, 646 (S.D. Ohio 2011).

Accordingly, the Court should dismiss Page's § 1983 claims against BMHCC, Methodist, Epic, CorVel, and West.

### 2. § 1985 Claims

Section 1985(3) provides a cause of action when "two or more" private persons conspire to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]" 42 U.S.C. § 1985(3); *see Montano-Perez v. Durrett Cheese Sales, Inc.*, 666 F. Supp. 2d 894, 904 (M.D. Tenn. 2009) ("Section 1985(3) 'creates a cause of action for conspiracy to violate civil rights,' that is, to deprive a person of equal protection and privilege under the law." (citation omitted)). To state a claim under § 1985(3), a plaintiff must allege the existence of: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the

United States." *Webb v. United States*, 789 F.3d 647, 671–72 (6th Cir. 2015) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518–19 (6th Cir. 2003)). The Supreme Court has interpreted § 1985(3)'s "language requiring intent to deprive of equal protection, or equal privileges and immunities" as requiring that "racial, or . . . otherwise class-based, invidiously discriminatory animus" motivate the conspiracy. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Webb*, 789 F.3d at 672.

BMHCC and CorVel argue that Page's § 1985(3) claims fail because he has not plausibly alleged that the defendants targeted him based on his race or any other protected class status. (Doc. Nos. 8, 34-1.) Page has not responded to this argument, and his complaint does not allege any facts that would allow the Court to infer that the defendants "acted with any class-based animus." *Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005). Page's claims under § 1985(3) are therefore subject to dismissal for failure to state claims on which relief can be granted. *See Peters*, 427 F.3d at 1038 (affirming district court's dismissal of § 1985(3) claims where plaintiff "alleged no facts that suggest the defendants acted with any class-based animus").

### 3. RICO Claims

"Enacted in 1970, the federal Racketeer Influenced and Corrupt Organizations Act prohibits one from engaging in 'a pattern of racketeering activity' in connection with 'any enterprise' whose activities affect interstate commerce." *Grow Mich., LLC v. LT Lender, LLC*, 50 F.4th 587, 593 (6th Cir. 2022) (quoting 18 U.S.C. § 1962(a)). "One of RICO's enforcement mechanisms is a private right of action, available to '[a]ny person injured in his business or property by reason of a violation' of [ ] RICO's substantive restrictions." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 453 (2006) (first alteration in original) (quoting 18 U.S.C. § 1964(c)). The Sixth Circuit has held that, "to state a civil RICO claim, a plaintiff must allege (1) two or more predicate racketeering offenses, (2) the existence of an enterprise affecting interstate commerce, (3) a connection between the racketeering offenses and the enterprise, and (4) injury by reason of

the above." *Grow Mich., LLC*, 50 F.4th at 594 (citing *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006)). RICO defines "racketeering activity" to include, among other things, "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . , which is chargeable under State law and punishable by imprisonment for more than one year[.]" 18 U.S.C. § 1961(1)(A); *see also Grow Mich., LLC*, 50 F.4th at 593–94 ("'Racketeering activity' means any of a set of specified state and federal crimes set forth in § 1961(1)."). It "defines a 'pattern of racketeering activity' as 'at least two acts of racketeering activity' that occur within ten years of one another." *Grow Mich., LLC*, 50 F.4th at 593 (quoting 18 U.S.C. § 1961(5)). "And the term 'enterprise' denotes any legal entity, such as a corporation, or 'any union or group of individuals associated in fact although not a legal entity.'" *Id.* at 594 (quoting 18 U.S.C. § 1961(4)). RICO imposes civil and criminal liability for conspiring to violate RICO's provisions. 18 U.S.C. § 1962(d). To plausibly state a RICO conspiracy claim, "plaintiffs must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the substantive RICO provision.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)).

BMHCC, Methodist, EPIC, CorVel, and West argue, among other things, that Page has failed to allege that these defendants engaged in any predicate racketeering activity. (Doc. Nos. 8, 10, 21, 34-1, 44.) Page has not responded to this argument; he only argues generally that his "rights include a private right of action under [RICO] . . . ." (Doc. No. 45, PageID# 252.)

Page's complaint includes general allegations that "[t]he defendants are participating in a conspiracy to commit Fraud on the Court" and, "[a]s part of the conspiracy, the defendants are covering up the theft of plaintiff['s] identity and property" and have also "covered up" "fraud

15

Case 3:23-cv-00851    Document 48    Filed 06/17/24    Page 15 of 17 PageID #: 327

against" Page's mother, "Mary Page[.]" (Doc. No. 1, PageID# 6.) In response to some of the defendants' motions to dismiss, Page asserts that "[t]he [d]efendants" engaged in "the use of threats and intimidation;" "perjury;" "bribery;" and "corrupt misleading conduct." (Doc. No. 17, PageID# 93.) Page states that he "filed complaints and forms regarding the theft of his [i]dentity and [p]roperty with the Federal Trade Commission . . . , Internal Revenue Service . . ., and the Department of Justice" and "reported to the (IRS) the use of his stolen [i]dentity to commit [f]raud in multiple illegal schemes." (Doc. No. 35, PageID# 180.) In response to West's motion to dismiss, Page asserts that "West Clinic knowingly and intentionally implemented a fraudulent scheme to steal [Page's] [i]dentity and [p]roperty." (Doc. No. 42, PageID# 224.) Page also attaches a copy of a motion to intervene that he filed in a qui tam case against Methodist and West brought under the False Claims Act, in which Page asserts that "Methodist Healthcare and West Clinic are co-conspirators in the theft of [his] identity, intellectual properties, and ideas" and that Page's "stolen intellectual properties and ideas were used in schemes to defraud [Centers for Medicare and Medicaid Services (CMS)] and CMS's Innovation Center." (Doc. No. 43-1, PageID# 235, 236); *see also* Motion to Intervene for Randel Page, Jr., at 2, 3, *United States ex rel. Liebman v. Methodist Le Bonheur Healthcare*, No. 3:17-cv-00902 (M.D. Tenn. May 17, 2023), ECF No. 339.

Even liberally construed, these allegations do not state a plausible RICO violation or RICO conspiracy claim against BMHCC, Methodist, EPIC, CorVel, or West because they do not plausibly allege that these defendants engaged in a pattern of racketeering activity or conspired with others to violate RICO. *See, e.g.*, *Jones v. Tenn. Dep't of Corr.*, No. 22-5292, 2022 WL 19765118, at *2 (6th Cir. Nov. 28, 2022) (affirming district court's dismissal of RICO claims where plaintiff's "complaint . . . offered only conclusory allegations of criminal conduct,

untethered to any specific facts"). Page's RICO claims against BMHCC, Methodist, EPIC, and CorVel should therefore be dismissed.

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the Court GRANT the motions to dismiss filed by Defendants BMHCC (Doc. No. 7), Methodist (Doc. No. 9), Tennessee (Doc. No. 15), EPIC (Doc. No. 20), CorVel (Doc. No. 34), and West (Doc. No. 36), and DISMISS Page's claims against these defendants.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 17th day of June, 2024.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge