RECEIVED

JUL 1 5 2024

U.S. District Court
Middle District of TN

# Exhibit A

Randel Page <randelpage@gmail.com>

# Re: Randel Page - Crime Report 2205005834ME
4 messages

**Rand Page** <randelpage@gmail.com>
To: "Sweet, Kara (USATNM)" <Kara.Sweet@usdoj.gov>

Fri, Nov 18, 2022 at 8:56 AM

Ms Sweet,

Please see the evidential emails between Butler Snow & Evans Petree conspiring to steal my identity and property.

Also attached is the fraudulent NDA that was produced by Joel Sklar & Julie Wells of Evans Petree. This NDA was attached as an exhibit to the fraudulent Monorail v Baptist/Epic complaint and used to commit fraud on the court.

Sincerely,

Randel Page
901-351-8060

🔄 Evans Petree Butler Snow - umails.pdf

📄 **Amended Complaint.pdf**
1967K

**Rand Page** <randelpage@gmail.com>
To: "Sweet, Kara (USATNM)" <Kara.Sweet@usdoj.gov>

Fri, Nov 18, 2022 at 8:56 AM

Sweet,

Please see the **evidential** emails between Butler Snow & Evans **Petree** conspiring to **steal** my **identity and property.**

Also attached is the fraudulent NDA that was produced by Joel Sklar & Julie Wells of Evans Petree. This NDA **was attached as an exhibit to the** fraudulent Monorail v Baptist/**Epic complaint** and **used to commit fraud on the court.**

**It's important** that the public be protected from racketeering in Shelby County Tennessee.
[Quoted text hidden]

📄 **Amended Complaint.pdf**
1967K

**Rand Page** <randelpage@gmail.com>
To: Kara Sweet <Kara.Sweet@usdoj.gov>

Sat, Nov 19, 2022 at 8:23 AM

Ms. Sweet,

A representative from Bass Berry Sims has contacted me.

My mother has communicated to you, that we have received death threats.

The threats are directly related to the crimes that have been committed against me and my family.

I request protection for my family.

Randel Page
901-351-8060

.

Bass Berry - email.PNG
61K

.

**Sweet, Kara (USATNM)** <Kara.Sweet@usdoj.gov>
To: Rand Page <randelpage@gmail.com>

Mr. Page,

You have sent documents to me. And because of the litigation, I needed to produce that to Bass Berry. They were unable to access the documents from the link you sent. That is the reason that you were contacted.

Please stop sending me documents. Your mother made a motion to intervene. Let's let the court address that.

Thanks,
Kara

Sent from my iPhone

On Nov 19, 2022, at 9:25 AM, Rand Page <randelpage@gmail.com> wrote:

[Quoted text hidden]

Share request for "Evans Petree Butler Snow - emails.pdf"

Jorge Molina (via Google Drive)

## Share an item?

Jorge Molina (jmolina@bassberry.com) is requesting access to the following item:

Evans Petree Butler Snow - emails.pdf

Editor ▶

**Bass Berry - email.PNG**
61K

# Exhibit B

M Gmail

Randel Page <randelpage@gmail.com>

## see attached. This is an actual form.
2 messages

**Ed Roberson** <robersones@gmail.com>                                      Fri, Dec 7, 2018 at 1:14 PM
To: Ray Brakebill <ray@thebrakebillcompany.com>, Rand Page <randelpage@gmail.com>, Michael Rafferty <mrafferty@harrisshelton.com>, Steve Priddy
<priddyse@aol.com>

> a

WEST0002.tif
142K

**Michael Rafferty** <mrafferty@harrisshelton.com>                          Fri, Dec 7, 2018 at 1:54 PM
To: Ed Roberson <robersones@gmail.com>, Ray Brakebill <ray@thebrakebillcompany.com>, Rand Page <randelpage@gmail.com>, Steve Priddy
<priddyse@aol.com>

# Exhibit C

Randel Page <randelpage@gmail.com>

# Re: Monorail v Baptist & Epic Civil Action No CT -0002704-17

9 messages

**Rand Page <randelpage@gmail.com>**
To: Tony Hullender <tony.hullender@ag.tn.gov>

Fri, Mar 18, 2022 at 9:29 AM

Mr. Hullender,

Please find attached my appeal sent to the Board of Professional Responsibility of the Tennessee Supreme Court regarding Civil Rights Violations & Fraud on the Court.

Also attached is documentary evidence of Judge Mary Wagner's participation in the conspiracy to cover up the theft of my property and Epic's fraudulent submissions to the court.

Judge Wagner violated her own court ordered mediation as part of the fraud.

The court ordered mediation was never entered on the Monorail v Baptist & Epic docket, nor was it imported into the Onbase case management database.

I will be filing a Civil Rights lawsuit pro se and have questions about assistance under Title 34.

I will be mailing your office a thumb drive with a directory of evidence supporting the claims and request a meeting with you at your earliest convenience to review the material.

Please note that Kara Sweet with the Department of Justice has confirmed receipt of the evidence.

Regards,
Randel Page
901-351-6060

**2 attachments**

📎 **File No. 67490-9-ES.pdf**
637K

📎 **Fwd_ Monorail v BMHCC & Epic.pdf**
480K

**Tony Hullender <Tony.Hullender@ag.tn.gov>**
To: Rand Page <randelpage@gmail.com>

Fri, Mar 18, 2022 at 12:57 PM

Mr. Page,

I don't see anything in your email that implicates something over which the Tennessee Attorney General's Office has jurisdiction. We are not involved in BPR proceedings. We do not (with a few narrow exceptions) handle criminal cases. We do not represent individuals in civil cases. The division I work in handles Medicaid fraud cases.

Perhaps you should consult a private attorney.

Sincerely,

Tony Hullender

Tony Hullender

Senior Assistant Attorney General

Medicaid Fraud and Integrity Division

Office of the Attorney General

John Sevier Building, 3rd Floor

500 Dr. Martin L. King, Jr. Blvd.,

Nashville, Tennessee 37243

tony.hullender@ag.tn.gov

615-532-2536

[Quoted text hidden]

**Rand Page** <randelpage@gmail.com>
To: Tony Hullender <Tony.Hullender@ag.tn.gov>

Fri, Mar 18, 2022 at 1:34 PM

Mr. Hullender,

Thanks you for the quick response.

Can you send me the contact information for the division that handles fraud and public integrity?

My mother (Mary Page) is also willing to go on the record regarding the fraud she discovered on her Medicare EOB's. Is there a separate division for Medicare?

I will seek private counsel.

Sent from my iphone

On Mar 18, 2022, at 12:57 PM, Tony Hullender <Tony.Hullender@ag.tn.gov> wrote:

[Quoted text hidden]

**Rand Page** <randelpage@gmail.com>
To: Tony Hullender <Tony.Hullender@ag.tn.gov>

Fri, Mar 18, 2022 at 1:48 PM

Also, is there a division that handles civil rights violations?

Sent from my iphone

On Mar 18, 2022, at 1:34 PM, Rand Page <randelpage@gmail.com> wrote:

Mr. Hullender,
[Quoted text hidden]

**Tony Hullender** <Tony.Hullender@ag.tn.gov>
To: Rand Page <randelpage@gmail.com>

Fri, Mar 18, 2022 at 3:13 PM

Medicare fraud would be handled by federal investigators and attorneys, and you have already notified Ms. Sweet.

My division handled Medicaid fraud, but I don't see that in your email.

I would need to know specifically what kind of fraud or public integrity you are talking about. For example, if a nonprofit organization is committing fraud, we have a division for that. But if you think someone defrauded you, you can report them to the police or get an attorney and sue them, but the AG 's Office does not have jurisdiction to get involved in that.

[Quoted text hidden]

**Rand Page** <randelpage@gmail.com>                                                          Fri, Mar 18, 2022 at 4:47 PM
To: Tony.Hullender <Tony.Hullender@ag.tn.gov>

Please provide me with the contact information for the nonprofit fraud division.

I have direct and documentary evidence of nonprofit fraud.

I also have knowledge and evidence of identity theft for use of fraud that would fall under the public integrity division.

Sent from my iphone

> On Mar 18, 2022, at 3:13 PM, Tony Hullender <Tony.Hullender@ag.tn.gov> wrote:

[Quoted text hidden]

**Tony Hullender** <Tony.Hullender@ag.tn.gov>                                                 Thu, Mar 31, 2022 at 3:31 PM
To: Rand Page <randelpage@gmail.com>

Mr. Page

Sorry for the late response. I was on vacation last week.

Probably the best approach would be for you to send a letter to Janet Kleinfelter, the Deputy Attorney General in charge of the Public Interest Division, explaining your allegation involving a non-profit Tennessee Corporation and providing any supporting documentation you have.

Sincerely,

Tony Hullender

[Quoted text hidden]

**Rand Page** <randelpage@gmail.com>
To: Tony Hullender <Tony.Hullender@ag.tn.gov>

Fri, Apr 1, 2022 at 2:06 PM

Thank you.

Sent from my iphone

On Mar 31, 2022, at 3:32 PM, Tony Hullender <Tony.Hullender@ag.tn.gov> wrote:

[Quoted text hidden]

**Rand Page** <randelpage@gmail.com>
To: Tony Hullender <Tony.Hullender@ag.tn.gov>

Tue, Apr 26, 2022 at 2:02 PM

Mr. Hullender,

I'll be sure to send Ms. Kleinfelter a copy of my civil rights lawsuit. The complaint will include exhibits to prove Non Profit fraud.

However, I still need the division for civil rights violations that involves a criminal conspiracy.

Thanks,
Randel Page
901-351-6060

Sent from my iphone

On Apr 1, 2022, at 2:06 PM, Rand Page <randelpage@gmail.com> wrote:

Thank you.
[Quoted text hidden]

# Exhibit D

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS"), (collectively, the "United States"), Methodist Le Bonheur Healthcare, Methodist Healthcare-Memphis Hospitals (together, "Methodist" or "Defendants"), and Jeffrey Liebman and David Stern ("Relators") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.      Defendant Methodist Le Bonheur Healthcare is a tax exempt integrated healthcare delivery system in Memphis, Tennessee. Defendant Methodist Healthcare-Memphis Hospitals is a subsidiary of Methodist Le Bonheur Healthcare that operates acute care hospitals for the system. In December 2011, Methodist entered into a multi-agreement affiliation with the West Clinic, P.C., n/k/a The West Clinic, PLLC ("West"), and the University of Tennessee Health Science Center ("UTHSC"). The affiliation agreements with West included an Asset Purchase Agreement, Management Services Agreement, Leased Employee and Administrative Services Agreement, and Professional Services Agreement. Methodist also made a $7 million investment in Acorn Research, LLC ("ACORN"). Together, the agreements and financial arrangements are referred to in this Agreement as the "Affiliation."

B.      On May 30, 2017, Jeffrey Liebman filed a qui tam action in the United States District Court for the Middle District of Tennessee captioned *United States ex rel. Liebman v. Methodist Le Bonheur Healthcare, et al.*, Civil Action No. 3:17-cv-00902 (M.D. Tenn.), pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil

Action"). On December 13, 2019, Relators filed a Second Amended Complaint adding David

Stern as a Relator. Relators' Second Amended Complaint named as defendants, Methodist Le

Bonheur Healthcare, Methodist Healthcare-Memphis Hospitals, The West Clinic, PLLC, West

Partners, LLC, Lee Schwartzberg, MD, Erich Mounce, Chris McLean, Gary Shorb, and John

Does 1-100. On February 9, 2021, the Court dismissed co-defendants West, West Partners,

LLC, Lee Schwartzberg, and Erich Mounce (collectively, "The West Defendants") from the suit

consistent with the terms of the settlement agreement that the Relators and the West Defendants

had reached. On March 11, 2022, the Court granted the United States's motion for leave to

intervene in the Civil Action, and on April 11, 2022, the United States filed its Complaint-in-

Intervention, naming only Methodist as a defendant. On June 22, 2022, the Court dismissed all

claims against Defendants Gary Shorb and Chris McLean and all claims asserted against any

defendant on behalf of the State of Tennessee under the Tennessee Medicaid False Claims Act.

      C.     The United States contends that Methodist submitted or caused to be submitted

claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C.

§§ 1395-1395lll ("Medicare").

      D.     As set forth in the Complaint-in-Intervention and in this paragraph, the United

States contends that it has certain civil claims against Methodist arising from Methodist's having

knowingly submitted or caused the submission of false claims on behalf of Methodist that

resulted from improper financial arrangements between Methodist and West, including

kickbacks that Methodist paid to West as part of the Affiliation, for which one purpose of the

remuneration paid to West was to induce referrals from West to Methodist during the period

from December 1, 2011, through February 23, 2019. That conduct is referred to below as the

"Covered Conduct."

2

E.    Methodist denies all claims and allegations in the Civil Action.

F.    This Settlement Agreement is neither an admission of liability by Methodist nor a concession by the United States that its claims are not well founded.

G.    Relators claim entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.    Methodist shall pay to the United States seven million, two-hundred and fifty thousand dollars ($7,250,000) ("Settlement Amount"), and interest on the Settlement Amount at a rate of 4.5% per annum from December 1, 2023 through December 21, 2023, all of which is restitution, no later than ten (10) business days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Middle District of Tennessee.

2.    In connection with this Agreement and this Civil Action, Relators claim a share of the Settlement Amount ("Relators' Share"). The Relators and the United States have reached a separate agreement that governs the Relators' Share in this case ("Relators' Share Agreement").

3.    Subject to the exceptions in Paragraph 5 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1, the United States releases Methodist, together with its current and former parent entities; direct and indirect subsidiaries; brother or sister entities; divisions; current or former owners; and the successors and assigns of any of them from any civil or administrative monetary claim the

3

United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

4.     Subject to the exceptions in Paragraph 5 below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1, Relators, for themselves and for their heirs, successors, attorneys, agents, representatives, and assigns, release Methodist from any civil monetary claim the Relators have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5.     Notwithstanding the releases given in Paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.     Any criminal liability;

    c.     Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from Federal health care programs;

    d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e.     Any liability based upon obligations created by this Agreement;

    f.     Any liability of individuals;

4

g.    Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

h.    Any liability for failure to deliver goods or services due; and

i.    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

6.    Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).  Conditioned upon Relators' receipt of the Relators' Share, Relators and their heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7.    Methodist waives and shall not assert any defenses Methodist may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

8.    Methodist fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Methodist has asserted, could have asserted, or

5

may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

9.     Methodist fully and finally releases the Relators and Relators' counsel from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Methodist has asserted, could have asserted, or may assert in the future against the Relators and Relators' counsel, related to (i) the Covered Conduct and Civil Acton (ii) expenses or attorneys' fees and costs, or (iii) any other action or inaction of the Relators or Relators' counsel through the date of this Agreement.

10.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Methodist agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

11.     Methodist agrees to the following:

a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395lll and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Methodist, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement;

6

(2)     the United States' audit(s) and civil investigation(s) of the matters covered

by this Agreement;

(3)     Methodist's investigation, defense, and corrective actions undertaken in

response to the United States' audit(s) and civil investigation(s) in

connection with the matters covered by this Agreement (including

attorneys' fees);

(4)     the negotiation and performance of this Agreement; and

(5)     the payment Methodist makes to the United States pursuant to this

Agreement and any payments that Methodist may make to Relators,

including costs and attorneys fees

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program

(FEHBP) (hereinafter referred to as Unallowable Costs).

b.      Future Treatment of Unallowable Costs:  Unallowable Costs shall be

separately determined and accounted for in nonreimbursable cost centers by Methodist, and

Methodist shall not charge such Unallowable Costs directly or indirectly to any contracts with

the United States or any State Medicaid program, or seek payment for such Unallowable Costs

through any cost report, cost statement, information statement, or payment request submitted by

Methodist or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or

FEHBP Programs.

c.      Treatment of Unallowable Costs Previously Submitted for Payment:

Methodist further agrees that within 90 days of the Effective Date of this Agreement it shall

identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors,

7

and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Methodist or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Methodist agrees that the United States, at a minimum, shall be entitled to recoup from Methodist any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Methodist or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on Methodist or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

        d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Methodist's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

        12.      This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 14 (waiver for beneficiaries paragraph), below.

8

13.     Methodist agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

14.     Within seven (7) days of receipt of the payment described in Paragraph 1, above, the Parties shall sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

15.     The terms of any payments by Methodist to Relators or Relators' counsel for expenses, and attorneys' fees and costs shall be made in accordance with a separate agreement between Relators and Relators' counsel and Methodist. Except as may be set out in any such separate agreement, each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

16.     Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

17.     This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Middle District of Tennessee. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

18.     This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

19.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

9

20.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21.     This Agreement is binding on Methodist's successors, transferees, heirs, and assigns.

22.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

23.     All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

24.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

10

DATED: 12|22|23 BY: _[signature]_
ELLEN BOWDEN MCINTYRE
Assistant United States Attorney
Middle District of Tennessee

DATED: _____ BY: SUSAN GILLIN  Digitally signed by SUSAN GILLIN
Date: 2023.12.22 08:45:10 -05'00'
SUSAN E. GILLIN
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

11

RECOMMENDED AND AGREED:

DATED: _____ BY: _____
MICHAEL UGWUEKE
Methodist Le Bonheur Healthcare
Methodist Healthcare Memphis Hospitals

DATED: _____ BY: _____
BRIAN ROARK
Bass, Berry & Sims PLC
Counsel for Methodist

12

**JEFFREY LIEBMAN AND DAVID STERN – RELATORS**

DATED: _____ BY: _____
                              JEFFREY LIEBMAN


DATED: _____ BY: _____
                  DAVID STERN


DATED: **12/22/23** BY: _____
                        JERRY MARTIN
                        Counsel for Jeffrey Liebman and David Stern


DATED: _____ BY: _____
                            BRYAN VROON
                            Counsel for Jeffrey Liebman and David Stern

13

**JEFFREY LIEBMAN AND DAVID STERN – RELATORS**

DATED: 12.21.2023    BY: *Jeffrey H. Liebman*
                          JEFFREY LIEBMAN

DATED: _____    BY: _____
                          DAVID STERN

DATED: _____    BY: _____
                          JERRY MARTIN
                          Counsel for Jeffrey Liebman and David Stern

DATED: _____    BY: _____
                          BRYAN VROON
                          Counsel for Jeffrey Liebman and David Stern

13

# Exhibit E



Dale Lane

3/5/23, 1:33 PM

Chief Lane,
I hope you find it appropriate to communicate with you on social media.
First, thanks for your time the other day.
Second, recently in conjunction with all my other efforts I filed an elder abuse report with the State of Tennessee on behalf of my mother.
Thirdly, I was contacted by Joe Herman with the

Thirdly, I was contacted by Joe Herman with the FBI.

The pervasiveness of the crimes committed against my family spread throughout our country and I'm certain more of your citizens have been victimized. I'm requesting that you play a role in justice for my family and the citizens of Collierville.

Sincerely,
Rand

justice for my family and the citizens of Collierville.

Sincerely,
Rand

7/8/23, 6:11 AM

Dale, did you communicate in good faith?

7/8/23, 8:44 AM

The public has a right to know what's going on.

Sent

# Exhibit F


## Re: Richard Glassman
3 messages

**Rand Page** <randelpage@gmail.com>
To: Jack Turner <johnturnerjr@gmail.com>, Jack Turner <jack@johnturnerlaw.com>

Thu, Oct 13, 2022 at 7:52 AM

Interesting that you referred me to Richard.

Richard represented my family when my brother was killed by a drunk driver.

After the case settled, my mother was contact and informed that Richard participated in a cover up regarding the case.

**Jack Turner** <jack@johnturnerlaw.com>
To: Rand Page <randelpage@gmail.com>
Cc: Jack Turner <johnturnerjr@gmail.com>, Jack Turner <jturner@cronelawfirmplc.com>

Thu, Nov 3, 2022 at 10:54 AM

Rand,

I suggested Richard because 1) he's a very skilled attorney and 2) he generally has no problem with suing other attorneys or accusing them of unethical conduct. I have no knowledge of any past dealings you had with him or how he may have handled your family's case.

If you want me to represent you, I can do so, but I don't believe in scorched earth litigation and I'm not going to make the accusations against McManus you're demanding.

If that's not acceptable to you, please say so. If it is, let me know and I'll have Crone Law Firm send you an agreement for legal services. If you don't tell me specifically that you want Crone Law Firm to represent you, I'll file a motion to withdraw. That seems like the best course of action since you and I seem to have radically different views on how to proceed. I'm willing to stay on, but I won't engage in conduct I believe to be unprofessional and unethical. And I understand you don't believe making the accusations would be unethical. I do, however, and I ultimately have to practice law according to my own principles and conscience

Just let me know one way or the other.

Jack

Sent from my iPhone

> On Oct 13, 2022, at 07:52, Rand Page <randelpage@gmail.com> wrote:
>
> ^
> Interesting that you referred me to Richard.
[Quoted text hidden]

**Rand Page** <randelpage@gmail.com>
Draft To: Jack Turner <johnbturnerjr@gmail.com>, Jack Turner <jack@johnbturnerlaw.com>

Jack,

I've asked to perform your duty by reporting the fraud on the court committed by John McManus & Mark Guthrie.

I also asked you to file a lien against Guthrie's property.

Have you done these two things?

[Quoted text hidden]